## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LEISURE VILLAGE OPERATING,      )
LLC, d/b/a LEISURE VILLAGE      )
HEALTH CARE CENTER              )
                                )
      **Plaintiff,**     )
                                )
vs.                             )     **Case No. 09-CV-654-JHP-FHM**
                                )
PROFESSIONAL CLINICAL           )
LABORATORY, INC.,               )
                                )
      **Defendant.**     )

## OPINION AND ORDER

Now before the Court is Defendant Professional Clinical Laboratory's Motion for Summary Judgment (Document # 38), Plaintiff's response (Dkt. # 45), and Defendant's reply (Dkt # 53). Also before this court is Plaintiff Leisure Village Operating, LLC's Motion for Summary Judgment (Dkt. 39), Defendant's response (Dkt. # 44), and Plaintiff's reply ( Dkt # 52).

## I.

This is a diversity action arising out of a workplace drug test. Plaintiff, Leisure Village Health Care Center is a long-term nursing care facility owned by Leisure Village Operating, LLC ("Leisure Village"). Defendant Professional Clinical Laboratory, Inc. ("ProLab"), federally licensed to provide clinical laboratory services, was the laboratory with whom Leisure Village contracted for the provision of clinical laboratory services to Leisure Village's patients. Non-party Kelli Mike ("Ms. Mike") was employed as a Licensed Practical Nurse (LPN) by Leisure Village, at the time of the workplace drug test, in June of 2007.

In June of 2007, Leisure Village staff noticed that certain controlled medications prescribed for Leisure Village patients ("Lortab") and stored on-site at Leisure Village, were unaccounted for.  Angela Haas, the administrative director of Leisure Village, directed Jennifer Mayfield, the director of nursing, to conduct workplace drug tests on those Certified Medical Assistants (CMA) employed by Leisure Village who were working during the period the medication became unaccounted for.  Subsequently, Angela Haas directed Jennifer Mayfield to conduct workplace drug tests on all LPNs employed by Leisure Village who were working during the period the medication became unaccounted for.

The contract between Leisure Village and ProLab does not provide for the provision of employee drug testing services, and ProLab was not licensed to conduct forensic drug tests. Nevertheless, Jennifer Mayfield contacted ProLab and informed an unnamed person that Leisure Village desired ProLab to pick up and test urine samples collected by Leisure Village from certain employees.  Jennifer Mayfield did not initially inform the unidentified person that Leisure Village was screening the samples for Lortab.  Jennifer Mayfield never read the Leisure Village contract with ProLab before calling ProLab.

On June 28, 2007, Ms. Mike reported to Leisure Village to collect her paycheck. Plaintiff was informed that she would have to submit a urine sample before she could pick up her paycheck, whereupon Jennifer Mayfield proceeded to collect a urine sample from Plaintiff. Jennifer Mayfield never read Leisure Village's internal policies regarding drug testing employees before collecting the urine specimens.  Jennifer Mayfield had previously been involved in several employee drug screens while working for the Veteran's Hospital in Muskogee and was familiar with forensic drug test requirements.  During collection of Ms. Mike's sample, Jennifer Mayfield did not: observe Ms. Mike provide the sample, prepare a chain

of custody form, secure the container in which Ms. Mike's sample was provided, or arrange for the sample to be picked up that same day. It is undisputed that Leisure Village's collection of Ms. Mike's urine sample did not comply with the Testing Act.

A ProLab employee, Teresa Balance, picked up the collected, unsecured samples and transported them to ProLab's facility in Oklahoma City. ProLab did not test the samples. Rather, the test was conducted by Quest Diagnostics Inc. ("Quest"), a laboratory testing facility with whom ProLab maintained a separate contract. ProLab contacted a Quest courier who retrieved the samples from ProLab. It is undisputed that the urine samples, as collected by Leisure Village, were not subjected to forensic testing as required by the Testing Act.

ProLab transmitted the written result of the tests performed by Quest to Leisure Village. The results were labeled: "FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING." The ProLab laboratory manager, Amy Blackwell, affirmed that it was not the policy of ProLab to conduct or transmit collected urine specimens for forensic testing and that she had no knowledge that another ProLab employee had agreed to transmit the samples to Quest for testing. The sample collected from Ms. Mike tested positive for illicit drugs.

It is undisputed that Leisure Village reported the results of Ms. Mike's urinalysis to the Oklahoma Board of Nursing ("the Board") on July 17, 2007. On June 28, 2007, Ms. Mike had already decided to resign her position at Leisure Village and go to work for another long-term nursing care facility named Ambassador Manor. Ms. Mike did not return to Leisure Village following the submission of her urine sample. Ms. Mike was not terminated from her position at Leisure Village, nor was she confronted by either Leisure Village or ProLab with the test results.

In September, 2007, Ms. Mike received a notice from the Board summoning her to a meeting. At the meeting, the Board informed Plaintiff that her workplace drug test results indicated use of controlled substances. Ms. Mike entered into a Stipulation, Settlement and Order with the Board on Sept. 11, 2007. Said Order allowed Ms. Mike to retain her license if she complied with seven conditions and timely provided documentation of compliance. The Board advised Ms. Mike that she was still permitted to practice as an LPN, but that she would have to meet a series of requirements in order to complete her probation. The Board further notified Ms. Mike that failure to meet the probationary requirements would result in revocation of her license. Ms. Mike failed to complete five mandatory drug tests. Ms. Mike failed to timely document attending ordered classes, and Ms. Mike failed to submit verification as required. As a result, Ms. Mike's license was temporarily suspended. Subsequently, the Board informed Ms. Mike that her license had been revoked.

Ms. Mike's LPN license was not revoked during the probationary period – she remained in a position to practice nursing and earn a living as such. Ms. Mike was not publicly censured by the Board, nor did she suffer any loss of wages or benefits until she failed to comply with the terms of her probation.

The instant action is one of three that have been filed as a result of damages allegedly arising from the above-described occurrence. Ms. Mike filed suit in the District Court in and for Tulsa County, Oklahoma, against Gold Medallion Senior Housing and Health Care, Leisure Village Health Care Center, and two individuals: Angela Haas and Jennifer Mayfield. Ms. Mike elected not to join ProLab in her initial action. Defendants in that action offered to allow judgment to be entered against them in the amount of $100,000.00. Ms. Mike accepted the offer.

Ms. Mike then filed an action in the Northern District of Oklahoma against ProLab and Quest on June 10, 2009. Ms. Mike alleged ProLab was a party to the workplace drug test conducted by Leisure Village and violated the Oklahoma Standards for Workplace Drug and Alcohol Testing Act, ("Testing Act"), 40 O.S. § 551, *et seq.* Ms. Mike further alleged gross negligence under Oklahoma common law.

Finally, Leisure Village, a defendant in Ms. Mike's original state court action, has brought the instant action against ProLab to recover the amount of the judgment paid to Ms. Mike and attorney fees incurred in defense of that action. Leisure Village alleges ProLab (I) breached the terms of their contract, and violated the provisions of the Oklahoma Standards for Workplace Drug and Alcohol Testing Act ("Testing Act"), 40 O.S. § 551, *et seq.*, and thereby (II) breached a legal duty to Leisure Village, and (III) was negligent *per se*.

ProLab moved for summary judgment in its favor as to Leisure Village's claims pursuant to the contract, negligence, and negligence *per se* alleging: I. (A) Pro-Lab did not breach a provision of the contract between the two parties, and (B) the improper collection of Ms. Mike's sample by Leisure Village made "forensic testing" impossible. Further, ProLab argued II (A) the Testing Act does not impose a duty on Pro-Lab and (B) the alleged violations of the Testing Act were not the proximate cause of Leisure Village's injuries. Next, ProLab argued (III) it was not negligent *per se* because (1) Leisure Village's damages were not caused by any alleged statutory violation; (2) employer liability to an employee is not the type injury intended to be prevented by the Testing Act; and (3) Leisure Village, as an employer, is outside the class of persons meant to be protected by the Testing Act. Finally, (IV) ProLab asserts Leisure Village is not entitled to contribution from ProLab because any potential liability of ProLab to Ms. Mike was not expressly extinguished by a release or the entry of judgment for Ms. Mike in her previous action.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (9186); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedure shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action'". *Id*. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts… Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)(citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998). "A

federal court sitting in diversity must apply the substantive law of the forum state…". *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir.1997).

## III.

Leisure Village alleges ProLab breached its agreement with Leisure Village by failing to comply with the provisions of the Testing Act. "ProLab failed to comply with Oklahoma statutes and rules with respect to the transportation of the urine samples, the requirement that testing be conducted in a licensed facility, and the testing procedures". *See* Dkt. # 38, Ex. "F": Pl.'s Pet. at 3, CJ-2009-5945 (June 25, 2009). Plaintiff refers to the provision of the written contract stating:

> "[ProLab] agrees to be responsible to [Leisure Village] for the proper compliance with all applicable government laws, ordinances, and regulations, including, but not limited to its personnel's Hepatitis and TB testing. [ProLab] shall not be required to provide [Leisure Village] with its personnel's medical records."

*See* Dkt. # 38, Ex. "I": Def.'s Contract w/Leisure Village at 5 ¶ 7.3.

Plaintiff argues ¶ 7.3 of the original, written Laboratory Services Agreement (LSA) between the parties, quoted above, applies to the provision of laboratory services for the employees of Leisure Village, as well as the latter's patients. In the alternative, Leisure Village argues the written LSA, effective in June 2007, was orally modified by Cynthia Thornton, ProLab-OKC's office manager, and Jennifer Mayfield, Leisure Village's director of nursing. *See* Dkt. # 39, 12-15.

However, because (A) forensic employee drug testing was beyond the scope of the written LSA, and thus ¶ 7.3, ProLab did not materially breach the terms of the written LSA. Further, because (B) neither person alleged to have orally modified the written LSA had the actual or apparent authority to do so from their respective employers, and because their extra-contractual, oral conversations were never fully executed, the written LSA between Leisure

Village and ProLab was not modified by an "executed oral agreement". Finally, because (C) Leisure Village's injuries were not proximately caused by the alleged breach of contract and because (D) performance of a forensic test on the urine sample provided by Leisure Village was impossible, ProLab's motion for summary judgment on Leisure Village's claim for breach of contract is granted.

A.

In Oklahoma, "a contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." 15 O.S. 2001 § 152. "[I]f the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated." *Whitehorse v. Johnson*, 2007 OK 11, ¶ 14 156 P.3d 41 (citing 15 O.S. 2001 § 154).

> The interpretation of a contract, and whether it is ambiguous is a matter of law for the Court to resolve. Contractual intent is determined from the entire agreement. If a contract is complete in itself and viewed in its entirety is unambiguous, its language is the only legitimate evidence of what the parties intended.

*Id*. at fn 32, 33, 34.

The scope of the contract between Leisure Village and ProLab is clearly stated in the language provided in ¶ 1.1:

> "The purpose of this Agreement is to state the terms and conditions under which [ProLab] will provide laboratory services to [Leisure Village's] **patients** at [Leisure Village's] facility."

*See* Dkt. # 38, Ex. "I": Def.'s Contract w/Leisure Village; Dkt. # 38, Ex. "K": D. Hambric Depo. 20:4 – 21:17. There is no provision in the LSA for laboratory services to Leisure Village employees for the purpose of forensic employee drug testing. *See* Dkt. # 38, Ex. "I": Def.'s Contract w/Leisure Village; Dkt. # 38, Ex. "K": D. Hambric Depo. 21:18 – 22:5.

Leisure Village does not allege that the terms of the agreement are unclear or ambiguous, and properly concedes that the written LSA is limited to patients. *See* Dkt. # 39 at 3, Fact no. 4. ProLab has not breached the terms of the written LSA between the two parties.[1]

## B.

The terms of the written contract specifically state that there were no express or implied undertakings between Leisure Village and ProLab. The language of the contract is a complete and final agreement. *See* Dkt. # 38, Ex. "I": Def.'s Contract w/Leisure Village; *see also* Dkt. # 38, Ex. "K": D. Hambric Depo. 22:7 – 24:1.

The terms of the contract further state that any modification to the rights and duties set out in the contract were not valid unless they were reflected in a writing and signed by the party that was bound by the modification. *See* Dkt. # 38, Ex. "I": Def.'s Contract w/Leisure Village; *see also* Dkt. # 38, Ex. "K": D. Hambric Depo. 24:3 – 24:10. Clearly, the written LSA was a contract between two legal entities, not individuals.

Leisure Village alleges the written LSA was orally modified by ProLab-OKC's office manager, Cynthia Thornton, and Leisure Village's director of nursing, Jennifer Mayfield. *See* Dkt. # 39 at 13. Leisure Village argues that a request by the Leisure Village director of nursing to ProLab-OKC's office manager to provide services not included in the written LSA, and the provision of those services in violation of ProLab's policy, served to broaden the scope of ¶ 1.1 to include those extra-contractual services, and brought them under the auspices of ¶ 7.3.

---

[1] The express terms of the written LSA also provide that "under no circumstances will Provider be responsible for consequential damages, special damages, court costs or attorneys fees". *See* Dkt. # 38, Ex. "I": Def.'s Contract w/Leisure Village, § 11.1. Leisure Village has offered no basis for recovering attorney fees. Further, the nature of the damages sought by Leisure Village (the amount of the judgment paid to Mike as the alleged consequence of Pro-Lab's acts or omissions as pled) from Pro-Lab are clearly consequential in nature, thus recovery – under any theory presented in the Petition – is barred under ¶ 11.1.

Leisure Village relies upon 15 O.S. 2001 § 237, which provides that "a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise."[2]  The Oklahoma Supreme Court has held the subsequent "executed oral agreement" referred to in § 237, supra, must be established by "positive, clear and convincing" proof. *Dewberry v. Universal C.I.T. Credit Corporation*, 1966 OK 77, 415 P.2d 978 ¶ 11.  The party asserting the modification bears the burden of proof.  *Foster Oil Co. v. Rogers*, 1925 OK 437, ¶ 11, 238 P. 435.

Here, it is undisputed that neither person alleged to have orally modified the written LSA was an original signatory to the written agreement.[3]  Further, Leisure Village has presented no evidence that either Cynthia Thornton or Jennifer Mayfield had the authority to modify the written LSA on behalf of their respective legal entity employers.  *See Bearden v. Smith*, 1954 OK 237, ¶ 9, 274 P.2d 1015 (defendant contractor, party to written contract, was not bound by his employee's alleged assurance to plaintiff subcontractor that additional expenses would be paid where plaintiff made no attempt to plead or prove that defendant's employee had the authority to bind defendant); *see also Davis v. Indian Territory Co*., 93 F.2d 976, 981 (10th Cir. 1937)(oral modification to written contract, by employee of contracting party, was not valid where said employee was not authorized to vary the terms of the written contract).[4]  It is undisputed that the ProLab representative authorized to sign contractual agreements with clients for Pro-Lab's Oklahoma territory was Brian Bradshaw.  *See* Dkt. # 44, Ex. "B": H. Shields Depo. 163:1 – 168:7 (Nov. 29, 2010).  Cynthia Thornton was the office manager and

[2]  It is undisputed that no subsequent, written contract between the parties exists.

[3]  The materials cited by Leisure Village do not establish the identity of the ProLab employee who took the call.  *See* Dkt. 44, Response to Fact No. 10.

[4]  Contrast with *Walker Valley Oil & Gas Co., v. Parks & Palmer*, 1928 OK 11, 262 P. 672 (modifying party was the president of the company that was party to the original written contract, whose authority to orally modify the written contract was part of the express, written agreement).

phlebotomy supervisor for ProLab, Inc's facility in Oklahoma City, Oklahoma, in June of 2007. Cynthia Thornton did not have the authority to sign new contracts, or modify any existing contract, between ProLab, Inc. and ProLab, Inc. clientele, to include Leisure Village. *See* Dkt. # 44, Ex. "A": P. Lyford Affidavit; Ex. "C": A. Blackwell Depo. 58: 12-14.

Assuming, *arguendo*, that Cynthia Thornton was the person who took the call from Leisure Village and that she did possess the authority to modify the terms of the written LSA, the "oral agreement" was not fully executed. An oral agreement modifying a written contract, although established, is ineffective to alter the terms of the written contract until its terms have been fully executed. *See Dewberry,* 1966 OK 77 at ¶ 11 (contended oral agreement remained unexecuted because $18 dollar consideration had not been paid); *see also Summerall v. Covington Bros. Farm Loan & Inv. Co.*, 1929 OK 341, ¶ 4, 280 P. 584 (original agreement for payment in cash could not be amended by subsequent, unexecuted oral agreement to tender payment in automobile casings); *Adkins v. Morgan*, 1935 OK 169, ¶ 8-9, 41 P.2d 835.

Here, no payment has been tendered to, or accepted by, ProLab for the extra-contractual employee drug-testing services that form the basis of Leisure Village's cause of action. *See* Dkt. # 44, Ex. "A": P. Lyford Affidavit (Dec. 29, 2010). Thus, the alleged oral agreement between Cynthia Thornton and Jennifer Mayfield remains unexecuted, and the written LSA between ProLab and Leisure Village remains unmodified to cover the services rendered under ¶ 7.3.

## C.

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." 23 O.S. 2001 § 21.

It is undisputed that Leisure Village failed to collect Ms. Mike's urine sample in accordance with the requirements of the Testing Act. *See* Dkt # 38, Facts 25-28. Thus, it was impossible from the outset for ProLab to provide Leisure Village with a forensic test of Ms. Mike's sample, as collected and delivered by Leisure Village. *See* Dkt # 38, 12-13.

Paragraph 7.3 of the written LSA does not enable Leisure Village to shift the responsibility for proper collection of employee urine samples to ProLab. Leisure Village had a clear legal obligation to familiarize itself with the Testing Act and collect Ms. Mike's urine sample in accordance with the provisions thereof. *See Estes v. ConocoPhillips Co.*, 2008 OK 21, 184 P.3d 518; *see also Creekmore v. Pomeroy IT Solutions, Inc.*, Slip Copy, 2010 WL 3702543 (N.D.Okla., 2010)(ignorance of the law is not a defense to violation of the Testing Act).

Leisure Village appreciated the distinction between forensic and clinical testing. *See* Dkt. # 38, fact no. 18, (Jennifer Mayfield had previously been involved in several employee drug screens while working for the Veteran's Hospital in Muskogee and was familiar with forensic drug test requirements); *see also* Dkt. # 44, Ex. "D": Leisure Village Supp. Disc. 2 ¶ 5 (Dec. 17, 2010);[5] Dkt. # 44, Ex. "F": G. Guymon Depo. 14:6 – 15:6 (Apr. 14, 2009). Nevertheless, Leisure Village's report of Ms. Mike's results to the Board, which constituted willful disregard of the disclaimer affixed to Ms. Mike's test results ("FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING."), violation of Leisure Village's own internal policies, and the confidentiality requirements of the Testing Act. *See* Dkt. # 38, Fact 33; *see also* 40 O.S. 2001 § 560(A)("Employers shall maintain all drug and alcohol test results and related information…as confidential records.). Leisure Village's alleged

---

[5] DATL refers to Drugs of Abuse Testing Laboratory, Inc., facility located in Tulsa, Oklahoma, who "provides a wide range of drug testing for all purposes". *See* http://www.datl.com/services.asp

damages were further caused by Ms. Mike's unforeseeable, independent failure to abide by the terms of probation, which resulted in the revocation of her license. *See* Dkt. # 38, Facts 34 – 42.

D.

Finally, ProLab argues that it was impossible to perform a statutorily compliant forensic test on the sample provided. "Where a contract has but a single object, and such object is…wholly impossible of performance…the entire contract is void." 15 O.S. 2001 § 104. "To bring a contract within the rule of impossibility of performance it must appear that the thing to be done cannot by any means be accomplished." *Clements v. Jackson County Oil & Gas Co.*, 1916 OK 943, 161 P. 216; *see Cosden Oil and Gas Co. v. Moss*, 1928 OK 352, 267 P. 855 (Nonexistence of essential thing on basis of whose existence contract was made excuses nonperformance).

Title 40 O.S. 2001 § 553 provides: "…employers who choose to conduct drug or alcohol testing of job applicants or persons employed in this state shall be governed by the provisions of this act and the rules promulgated pursuant thereto."

> "The State Board of Health shall implement and enforce the provisions of the Standards for Workplace Drug and Alcohol Testing Act. The Board shall have the power and duty to promulgate, prescribe, amend and repeal rules for the licensure and regulation of testing facilities and for the establishment and regulation of minimum testing standards and procedures, which shall include, but not be limited to, the following: 8. Chain-of-custody procedures;…13. Training and qualifications of collection site personnel; 14. Sample collection procedures that ensure the privacy of the individual and prevent and detect tampering with the sample; 15. Sample documentation, storage and transportation to the testing facility;"

*See* 40 O.S.Supp. 2006 § 557(A).

Urine specimen collection procedures are provided for at OAC § 310:638-1-8. It was Leisure Village's independent responsibility, as an Oklahoma employer subject to the Testing Act, to designate a collection site, develop procedures for the security of the collection site,

prepare a chain of custody form, restrict access to the collection site, and take steps to ensure the integrity and identity of the specimen. *Id.*

It is clear from the evidence that Leisure Village did not comply with these collection control requirements. Jennifer Mayfield did not: designate a "collection site", ensure access to the area where Ms. Mike was providing her sample was by authorized personnel only, prepare a chain of custody form, keep the sample in sight after it was provided, or secure the container in which Ms. Mike's sample was provided. Thus, a statutorily compliant forensic test was impossible from the outset due to Leisure Village's failings.

## IV.

Defendant ProLab moved for summary judgment as to Leisure Village's claim of negligence alleging that (A) the Testing Act does not confer a duty to employees on testing facilities, and (B) any such violation was not the direct, or proximate, cause of the injuries claimed by Leisure Village.

## A.

The Testing Act, 40 O.S. §§ 551-565, was enacted in 1993 to govern employers who test job applicants or employees for drugs or alcohol. *Estes v. ConocoPhillips Co.*, 2008 OK 21, 184 P.3d 518. "The purpose behind the Testing Act is to create standards for employer drug and alcohol testing so both employees and employers can be assured of due process." *Id.* (emphasis added). The parties dispute the applicability of the civil liability provision of the Testing Act to a testing facility. ProLab argues the provisions of the Testing Act impose a civil action remedy against employers, while testing facility violations are subject only to administrative fine.

The Testing Act clearly imposes a duty on *employers* to conform to the Testing Act for the sake of their employees. *See e.g.* 40 O.S.Supp. 2005 § 554 ("Employers who choose to

conduct drug or alcohol testing may only request or require an applicant or employee to undergo testing under the following circumstances…"); *see also* 40 O.S. 2001 § 555(A)("No employer may request or require an applicant or employee to undergo drug or alcohol testing unless the employer has first adopted a written, detailed policy setting forth the specifics of its drug or alcohol testing program."; 40 O.S. 2001 § 556(B)("An employer shall pay all costs of testing for drugs or alcohol required by the employer…"); 40 O.S. 2001 § 560 (A)("Employers shall maintain all drug and alcohol test results and related information"); 40 O.S. 2001 § 561 ("Drug or alcohol testing governed by the Standards for Workplace Drug and Alcohol Testing Act shall not be requested or required of an employee by an employer unless the employer provides an employee assistance program."); 40 O.S. 2001 § 564 ("On and after the effective date of this act no employer shall implement a drug or alcohol testing program subject to the provisions of this act unless the program is in compliance with the provisions of this act and the rules promulgated pursuant thereto."  The Testing Act is devoid, however, of any specific reference to a duty owed to employees on the part of a testing facility.

Section 563(A) provides employees with a right to bring a civil action against employers who violate the provisions of the Testing Act:

> "Any person aggrieved by a willful violation of the Standards for Workplace Drug and Alcohol Testing Act may institute a civil action in a court of competent jurisdiction within two (2) years of the person's discovery of the alleged willful violation or of the exhaustion of any internal administrative remedies available to the person, or be barred from obtaining the relief provided for in subsection B of this section."

That the civil action remedy was intended to be wielded by employees against employers is implied by both the above reference to exhaustion of "internal administrative remedies" and nature of the damages provided for in Section 563(B).  Said damages are clearly of a kind an employee would seek from an employer, not a testing facility:

> "A prevailing party may be awarded declaratory or injunctive relief and compensatory damages which may include, but not be limited to, **employment, reinstatement, promotion**, the payment of lost wages and other remuneration to which the person would have been entitled and **payment of and reinstatement to full benefits and seniority rights**. Reasonable costs and attorney fees may be awarded to the prevailing party."

Further, 40 O.S. 2001 § 560 (A)(emphasis added) provides that the drug test results and the incidental information shall remain confidential:

> "Employers shall maintain all drug and alcohol test results and related information…as confidential records. Such records, including the records of the testing facility, shall not be used in any criminal proceeding, or any civil or administrative proceeding, except in those actions taken by the employer or in any **action involving the individual tested and the employer** or unless such records are ordered released pursuant to a valid court order."

The Testing Act enabled the Oklahoma State Board of Health (Board of Health) to promulgate rules for the licensure and regulation of testing facilities, and for the establishment of minimum testing standards and procedures. *Estes*, 2008 OK 21, ¶ 8. ProLab acknowledged it is not licensed to perform forensic drug testing on Oklahoma employees. However, testing facilities that violate the provisions of the Testing Act are expressly subject only to administrative fine, not a civil action. 40 O.S. 2001 § 558(C).

> "Any testing facility providing laboratory services to an employer to test for the evidence of drugs or alcohol which is not licensed by the State Department of Health pursuant to this section shall be subject to an administrative fine of not more than Five Hundred Dollars ($500.00) for each offense. Each test performed by the unlicensed testing facility in violation of this section shall constitute a separate offense."

*Id*. No Oklahoma Court has ever held that Section 563 provides a civil action for any party other than an employee, aggrieved by an employer's willful violation of the Testing Act. Consequently, this action is not authorized by the Testing Act and ProLab is entitled to summary judgment.

**B.**

Even if the Court were to assume that Section 563 provides employers with a civil action remedy against testing facilities, ProLab remains entitled to summary judgment, as the undisputed material facts show that any violation of the Testing Act by ProLab was superseded by the intervening actions and omissions of both non-party Ms. Mike and Leisure Village.

> "The sufficiency of the evidence to show causal connection between the acts of the defendant and the injury complained of presents a question of law for the court. The general rule is that the causal connection between an act of negligence and an injury is broken by the intervention of a new, independent and efficient cause which was neither anticipated nor reasonably foreseeable."

*Thompson v. Presbyterian Hosp., Inc.,* 1982 OK 87, ¶ 12, 652 P.2d 260.

A supervening cause is one that interrupts or breaks the connection between a defendant's act, or omission, and a plaintiff's injury. ProLab's alleged violations of the Testing Act would not be the direct cause of Leisure Village's alleged damages if another event intervened between the two and that event was: (1) independent of ProLab's act; (2) adequate by itself to cause Leisure Village 's injury; and (3) not reasonably foreseeable by ProLab. *Graham v. Keuchel*, 1993 OK 6, ¶ 14, 847 P.2d 342; *see also* Oklahoma Uniform Jury Instruction 9.8; *Thompson v. Presbyterian Hosp., Inc*., 1982 OK 87, ¶ 14, 652 P.2d 260, 264-65 (negligence of anesthesiologist was supervening cause of patient's injuries); *Henry v. Merck & Co., Inc.*, 877 F.2d 1489, 1494-97 (10th Cir. 1989)(criminal acts of stealing sulphuric acid and throwing it on the plaintiff were a supervening cause of plaintiff's injuries).

Here, Leisure Village's alleged damages were caused by Leisure Village's report of Ms. Mike's results to the Board, which constituted willful disregard of the disclaimer affixed to the results of Ms. Mike's test results ("FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING."), Leisure Village's own internal policy, and the confidentiality requirements of the Testing Act. *See* Dkt. # 38, Fact 33; *see also* 40 O.S.

2001 § 560(A)("Employers shall maintain all drug and alcohol test results and related information…as confidential records.). Leisure Village's alleged damages were further caused by Ms. Mike's unforeseeable, independent failure to abide by the terms of probation, which resulted in the revocation of her license. *See* Dkt. # 38, Facts 34 – 42.

The following facts are undisputed. In September, 2007, Ms. Mike received a notice from the Board summoning her to a meeting. At the meeting, the Board informed Plaintiff that her workplace drug test results indicated use of controlled substances, including marijuana and possibly cocaine. Ms. Mike was informed that she would retain her license if she entered a "peer assistance program". The Program called for attendance at peer meetings, mandatory urinalysis screenings, and counseling. The Board advised Ms. Mike that she was still permitted to practice as an LPN, but that she would have to meet a series of requirements in order to complete her probation. The Board further notified Ms. Mike that failure to meet the probationary requirements would result in revocation of her license. Ms. Mike failed to complete five mandatory drug tests. Ms. Mike failed to timely document attending ordered classes, and Ms. Mike failed to submit verification as required. As a result, Ms. Mike's license was temporarily suspended. Subsequently, the Board informed Ms. Mike that her license had been revoked. Ms. Ms. Mike did not suffer any loss of wages or benefits, until she failed to comply with the terms of her probation, she was not publicly censured by the Board, and her LPN license was not revoked during the probationary period – she remained in a position to practice nursing and earn a living as such. *See* Dkt. # 38, Facts 34 – 42.

Further, the results of the test forwarded to Leisure Village were clearly labeled: "FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING." *See* Dkt. # 38, Ex. "P": Rpt. of Test Results.

"'The general rule is that the causal connection between an act of negligence and injury is broken by the intervention of a new, independent and efficient cause, which was neither anticipated nor reasonably foreseeable. In such case the negligence of the original wrongdoer is not actionable because it is only the remote, rather than the proximate, cause of the injury. Thus where a negligent act merely creates a condition making an injury possible, and a subsequent independent act causes the injury, the original act of negligence is not ordinarily the proximate cause thereof.

*Long v. Ponca City Hospital, Inc.*, 1979 OK 32, ¶ 10, 593 P.2d 1081 (quoting *Champlin Oil & Refining Co. v. Roever*, 477 P.2d 662, 665, 667 (Okl. 1970).

    1)  <u>The conduct of Leisure Village and Ms. Mike was adequate to cause injuries</u>

The adequacy of Leisure Village's conduct – forwarding test results to the Board with knowledge of their non-forensic nature – and Ms. Mike's conduct – failure to abide by the terms of her probation – cannot be measured by applying a simple "but for" analysis to ProLab's alleged violation of the Testing Act. Leisure Village may not maintain the causal chain by arguing, for example, that "but for" ProLab's alleged violation of the Testing Act, Leisure Village would never have reported Ms. Mike to the Board, and Ms. Mike would not have been placed on probation, putting her in a position to lose her license.

"A remote cause which merely furnishes the *occasion* for an injury which results from an intervening efficient cause cannot be the predicate for liability, *even though the injury would not have happened "but for" the earlier incident*." *Graham*, 1993 OK 6, ¶ 19. The Court's analysis in *Graham* requires an accounting of both the "nature of the risk and the character of the intervening cause. *Id*. at ¶ 20.

Leisure Village would not have become exposed to liability had Leisure Village not willfully and knowingly forwarded the results of a non-forensic test to the Board. Even where Leisure Village assumed the results *were* for forensic purposes, the Testing Act forbids the action taken by Leisure Village. Title 40 O.S. 2001 § 560 (A)(emphasis added) clearly provides

the results of employee drug tests and incidental information shall remain confidential:

> "Employers shall maintain all drug and alcohol test results and related information…**as confidential records**, separate from other personnel records. Such records, including the records of the testing facility, shall not be used in any criminal proceeding, or any civil or administrative proceeding, except in those actions taken by the employer or in any action involving the individual tested and the employer or unless such records are ordered released pursuant to a valid court order."

Leisure Village was under no legal obligation to forward the results of Ms. Mike's urinalysis to the Board. The obligation of Leisure Village, and other nursing facilities, to report nursing incidents to the Board is provided for by regulation. OAC § 310:675-7-5-1. There is no provision requiring a nursing facility to report the results of a workplace drug test to licensing boards. *Id.*

Leisure Village attempted to justify this indiscretion by citing the safety of their residents. However, it is undisputed that Leisure Village was on notice, prior to the conduct of the workplace drug test, that Ms. Mike was voluntarily terminating her employment with Leisure Village in favor of employment with Ambassador Manor. *See* Dkt. # 38, Fact 22. As a result, Leisure Village's conduct was a supervening cause following any alleged impropriety by Pro-Lab.

Ms. Mike would not have lost her license as a nurse if she, herself, had not intervened to bring about the harmful result. At worst, Pro-Lab may be said to have created a condition in bringing about the placement of Ms. Mike on probation with the Board. However, Ms. Mike suffered no injury as a result of her probationary status. First, Ms. Mike did not suffer loss of wages or benefits, having testified that she planned to leave her job at Leisure Village and take another, regardless of the test herein complained of. Second, Ms. Mike was not publicly censured by the Board. Third, her LPN license was not initially revoked during the probationary

period – she remained in a position to practice nursing and earn a living as such.

     2)  <u>Leisure Village's acts, as well those of non-party Ms. Mike, were an "independent force"</u>

In *Graham*, 1993 OK 6 ¶ 18, the Court evaluated whether a plaintiff's acts were an "independent force" by reviewing plaintiff's control of the situation and determining whether or not the alleged tortfeasors could have prevented the eventual harm.

Here, Leisure Village had full knowledge that the results were appropriate for medical use only. Leisure Village was clearly on notice that the lab results were not intended to support a charge of drug use against an employee. Pro-Lab could not prevent Leisure Village's independent, intervening decision to forward the results to the Board.

Further, Ms. Mike was in complete control of her probationary status. The evidence shows Ms. Mike had full knowledge of the risks of failing to abide by the terms of her probation. Ms. Mike does not deny that she received correspondence from the Board of Nursing outlining the terms of her probation and the consequences of failing to comply. Regardless, Ms. Mike acknowledged missing five separate urinalysis screenings required by the Board – one inadvertently, the others willfully, whereupon her license was suspended. Ms. Mike further acknowledged missing classes and failing to submit verification of compliance with the terms of suspension, whereupon her license was revoked for a two-year period.

     3)  <u>Pro-Lab could not *reasonably foresee* that (i) a licensed practical nurse, placed on probation by the State Nursing Board, would willfully fail to abide by the terms of her probation knowing her license would be revoked as a consequence, or (ii) Leisure Village's willful disregard of the disclaimer affixed to Ms. Mike's test results</u>

"A negligent actor is *not* bound to *anticipate* another's wrongful act *after the latter has*

*discovered the danger* that arises from the former's negligence." *Graham*, 1993 OK 6, ¶ 13 (emphasis original). ProLab could not have reasonably foreseen that Leisure Village would willfully disregard the disclaimer, plainly affixed to the test results for Ms. Mike ("FOR MEDICAL TREATMENT ONLY…ANALYSIS WAS PERFORMED AS NON-FORENSIC TESTING." and forward the results to the Board. Further, ProLab could not reasonably foresee that the original plaintiff, Ms. Mike, would willfully fail to abide by the terms of her probation in the face of substantial risk of a known and appreciated danger that her license would be revoked.

**V.**

Leisure Village also alleges negligence *per se.* *See* Dkt. # 38, Ex. "F": Pl.'s Pet. CJ-2009-5945. This Court notes at the outset that this claim is barred by the Laboratory Services Agreement between Leisure Village and ProLab. *See* Dkt. # 38, Ex. "I": Def.'s Contract w/Leisure Village ¶ 11.1. The Agreement absolves ProLab of all liability except for willful misconduct or gross negligence and requires Leisure Village to hold ProLab harmless against such loss. Further, Leisure Village's alleged damages related to the attorney fees received by its firm of choice in defending Ms. Mike's first action are similarly barred by ¶ 11.1.

As to the merits of this claim, "to establish negligence on the basis of a statutory violation the party must establish that: 1) the injury was caused by the violation; 2) the injury was of a type intended to be prevented by the statute; and 3) the injured party was of the class meant to be protected by the statute. *Busby v. Quail Creek Golf and Country Club*, 1994 OK 63, 885 P.2d 1326.

As previously discussed, any injuries allegedly sustained by Leisure Village were not caused by Pro-Lab's alleged violation of the Testing Act, but by Plaintiff's own supervening acts. Further, the type of injury intended to be prevented by the Testing Act was clearly the loss

of employment, or other disciplinary action taken, on the basis of improper workplace drug tests. Here, Leisure Village is not an employee, but the employer. Finally, the Testing Act was intended to protect employees. There is no language, anywhere in the statute, and no Oklahoma Court has ever held, that the provisions of the Testing Act were meant to protect employers, such as Leisure Village.

## VI.

Finally, Leisure Village is not entitled to contribution from ProLab because ProLab's potential liability to Ms. Mike was not expressly extinguished by a release or the entry of judgment in Ms. Mike's previous action.

Ms. Mike originally filed suit in the District Court in and for Tulsa County, Oklahoma, against Gold Medallion Senior Housing and Health Care, Leisure Village Health Care Center, and two individuals: Angela Haas and Jennifer Mayfield. In that original action, defendants allowed judgment to be entered against them, pursuant to 12 O.S.Supp. 2002 § 1101.1, in the amount of $100,000.00. No Settlement Release or Release and Satisfaction of Judgment was ever executed or filed. The Judgment did not specifically name or release ProLab as a joint tort-feasor.

Leisure Village claims no damages as a result of the alleged breach of contract, negligence, and negligence *per se* of Pro-Lab other than the amount of a judgment paid to Ms. Mike in a separate action. Leisure Village brings the instant action to recover "damages in the amount of $100,000.00 paid to Ms. Mike as judgment in *Mike v. Gold Medallion et al.*, (*see* Ex. "E": K. Mike's Compl. 09-cv-363 JHP FHM) and the amount of $48, 687.91 paid in attorney fees and costs for the defense of this matter." *See* Dkt. # 38 at 4, Fact No. 8, citing Ex. "G": Pl.'s Ans. to Pro-Lab's Interrog. (Aug. 12, 2010).

However, "[a] tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in a settlement which is in excess of what was reasonable." 12 O.S. 2001 § 832(D); *see also National Union Fire Ins. Co. v. A.A.R. Western Skyways, Inc.*, 1989 OK 157, ¶¶ 28-29, 784 P.2d 52 (Under Section 832, settlement agreements not releasing liability of other tort-feasors bar settlor from obtaining any contribution from unreleased tort-feasors in contribution action). ProLab's potential liability to Ms. Mike was not expressly extinguished by the judgment in *Mike v. Gold Medallion et al.*

## VII.

**IT IS THEREFORE ORDERED** that Defendant Professional Clinical Laboratory, Inc.'s Motion for Summary Judgment (Dkt. # 38) is **granted.** Plaintiff Leisure Village Operating, LLC's Motion for Summary Judgment (Dkt. # 39) is **denied**.

James H. Payne
United States District Judge
Northern District of Oklahoma